# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                      No. CR 12-3290 JB

GORDON CHAVEZ,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion to Withdraw as Counsel, Request for Substitution of Court-Appointed Counsel, and Motion to Continue Dealdine [sic] for Submission of Objections to Presentence Report and Defendant's Sentencing Memorandum, filed February 3, 2014 (Doc. 95)("Motion to Withdraw").  The Court held a hearing on February 10, 2014.  The primary issues are: (i) whether to allow attorneys Amy Sirignano, Kevin Nault, and Quinn Kirby to withdraw their representation of Defendant Gordon Chavez; (ii) whether to appoint Chavez an attorney under the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"); and (iii) whether to continue the March 3, 2014 sentencing hearing.  The Court will grant the Defendant's request for a seven-day extension of the deadline for submission of objections to the Presentence Report ("PSR"), because Plaintiff United States of America does not object to the extension.  The Court will not allow all three attorneys to withdraw, because all that remains in the case is sentencing, and the introduction of entirely new counsel would delay proceedings significantly.  Because Chavez can no longer pay for representation, however, the Court will allow two of the three to withdraw, and will appoint the third under the CJA; the Court allowed Chavez to elect which of the attorneys he would like have appointed to his case,

and Chavez elected Ms. Sirignano.   Last, because Ms. Sirignano's appointment provides continuity of representation in this case, the Court will not continue the March 3, 2014 sentencing hearing.

### PROCEDURAL BACKGROUND

On September 3, 2013, Chavez pled guilty to one count of deprivation of rights under color of law pursuant to 18 U.S.C. § 242, and one count of false statement under 18 U.S.C. § 1001.  See Plea Minute Sheet, filed September 3, 2013 (Doc. 88); Indictment, filed December 19, 2012 (Doc. 18); Plea Agreement, filed September 3, 2013 (Doc. 87).  In doing so, Chavez admitted that, while working as a probation and parole officer for the State of New Mexico, he touched the breast of one of his supervisees, named by the initials S.Z., and directed her to bring him photographs of her naked.  See Plea Agreement at 4.  When Federal Bureau of Investigation agents interviewed him, he denied touching S.Z.'s breast or attempting to procure photographs from her.  See Plea Agreement at 4.  Sentencing was set for March 3, 2014, and the Court set a deadline of February 4, 2014, for the parties to file objections to the PSR.

After signing the Plea Agreement and entering the plea, but before sentencing, Chavez' attorneys filed this Motion to Withdraw.  They cite two reasons for their desire to withdraw: (i) "Chavez has not abided by the terms of his representation agreement and continued representation of client will not render effective assistance of counsel;" and (ii) "Chavez no longer has the funds to maintain private counsel."  Motion to Withdraw at 1, 2.  They note that "Chavez has executed a CJA-23 form,[1] which was provided to the Court Clerk's Office on

_____

[1] This is the Financial Affidavit from which the Court determines whether a criminal defendant is indigent for the purposes of being appointed CJA counsel.  It contains basic questions about employment, income, assets, debts, and dependents.  See Financial Affidavit, filed January 27, 2014 (Doc. 100).

Friday, December 31, 2014."  Motion to Withdraw at 2.  They also request a seven-day extension on the Court's deadline for objections to the PSR and note that the United States does not oppose the extension.  <u>See</u> Motion to Withdraw at 2.  They requested that the Court conduct an ex parte hearing on the motion.  <u>See</u> Motion to Withdraw at 2.

The United States filed a response opposing the motion.  <u>See</u> United States' Response to Motion to Withdraw as Counsel, Request for Substitution of Court-Appointed Counsel, and Motion to Continue Dealdine [sic] for Submission of Objections to Presentence Report and Defendant's Sentencing Memorandum, filed February 4, 2014 (Doc. 96)("Response").  It asserts that

> [d]efense counsels' withdrawal, en masse, at this stage of the proceedings will result in unnecessary delay, depriving the victim of the closure sentencing helps bring about.  Permitting withdrawal also will force the public to bear the substantial financial burden of bringing new counsel up to speed in an involved case -- work wholly duplicative of that which Chavez'[] current lawyers already have received compensation to do.

Response at 3.  The United States concludes that, "[t]o warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict."  Response at 3 (quoting <u>United States v. Porter</u>, 405 F.3d 1136, 1140 (10th Cir. 2005))(internal quotation marks omitted).  The United States argues that "[a] client's inability to pay legal fees generally is an insufficient basis" to withdraw representation.  Response at 3 (quoting <u>United States v. Parker</u>, 439 F.3d 81, 104 (2d Cir. 2006))(internal quotation marks omitted).

The United States asserts that "[d]efense counsels' cursory motion leaves the United States and the Court to guess what they mean when they claim that Chavez has not complied with his representation agreement or that further representation would be ineffective."  Response

at 4. The United States asserts that the Motion to Withdraw "do[es] not describe . . . a substantive conflict, a conflict or interest, or a complete breakdown in communication." Response at 4. The United States asserts that "Chavez'[] inability to pay" is the issue "that seems most likely to underlie defense counsels' general argument." Response at 4. The United States also contends that "permitting withdrawal will prejudice the United States, the [v]ictim, the Court, and the [p]ublic," because any new lawyer would have "to learn this case from square one." Response at 5 (emphasis omitted). The United States last asserts that "withdrawal comes [with] the likelihood of substantial additional delay." Response at 5.

Chavez' attorneys filed a reply to the United States' response. See Reply to United States' Response to Motion to Withdraw and [sic] Counsel and Request for Substitution of Counsel, filed February 4, 2014 (Doc. 97)("Reply"). They characterize "the United States' response [as being] that counsel do not reveal privileged attorney-client communications to the United States and the public regarding the detailed basis for the motion to withdraw." Reply at 1. They also respond to the United States' assertion of prejudice by noting that "Chavez already saved the Court and the public considerable time and expense by accepting responsibility for his actions by pleading guilty," and asserting that, because "Chavez has the right to effective assistance of counsel at the sentencing, . . . if some minor delay and expense is necessary to ensure . . . Chavez his constitutional rights, it must be endured." Reply at 2 (citing Glover v. United States, 531 U.S. 198, 202-203 (2001)).

The Court held a hearing on the Motion to Withdraw on February 10, 2014. See Transcript of Hearing, taken February 10, 2014 ("Tr.").[2] The Court indicated that it would first

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line

allow both parties to argue in the other's presence, and then would have the United States leave the room so that Chavez' attorneys could discuss any matters that touched upon attorney-client privilege.  See Tr. at 2:3-7 (Court).  The United States stated that, although it was "flying a little bit blind," because Chavez did not divulge the motion's substance because of attorney-client privilege issues, its primary concern was that the "hearing on the [third] of March . . . go forward on schedule."  Tr. at 2:15, 2:17 (Baker).

Chavez' attorneys -- represented at all times in the hearing by Ms. Sirignano -- contended that their motive for withdrawal was not "just a financial issue," and that the United States' "response is a little confusing to us in that in one paragraph the [g]overnment is saying that there is very little to be done, but then there would be substantial delay if someone else were to come on and have to work from the very beginning."  Tr. at 4:4, 4:12-16 (Sirignano).  Ms. Sirignano indicated that "there is one issue left here[;] it's a sex offender registration issue I believe that's a very big issue for Mr. Chavez, and it needs to be briefed appropriately."  Tr. at 4:18-21 (Sirignano).  She noted that "the victim in this case is still in custody[, s]o any delay here really isn't going to bear on her.  It's not as if she's going to be [at] the sentencing hearing on March 4, because she's still in custody with the State Department of Corrections."  Tr. at 4:25-5:5 (Sirignano).

The Court indicated that it was disinclined to consider the issue of sex offender registration status at sentencing.  See Tr. at 5:10-20 (Court).  The Court stated that it

> doesn't as part of its supervised release impose any registration requirements.  It simply says if they do have obligations to register, they have to comply with those or they will be in violation of their terms of supervised release.  So we don't make a determination as to whether they are required to do it.

---

numbers.

Tr. at 5:12-19 (Court).

Ms. Sirignano stated that the "plea agreement left it up to the Court to decide whether or not sex offender registry was proper," and the initial PSR "did not speak at all about sex offender registr[ation]," but "the memorandum [to the PSR] says he would be required to register as a sex offender on the Isleta pueblo where he resides."  Tr. at 5:21-6:4 (Sirignano).  She said that the issue is whether "the Isleta Pueblo sex offender registry[ is] . . . in substantial federal compliance."  Tr. at 6:9-11 (Sirignano).  She stated that "the statute that . . . Chavez pled guilty to, we don't believe, is a qualifying event" to trigger sex offender registration, "so someone is going to have to determine whether it is or not."  Tr. at 7:20-23 (Sirignano).

The Court stated that it "ha[d] never determined what somebody's sexual registration requirements were at sentencing."  Tr. at 7:17-19 (Court).  The Court stated that, when Chavez gets placed on supervised release,

> at that day, if you still feel that he doesn't have to comply with tribal law, then if he wants to not register, then either probation will bring a petition to me and we'll decide it at that point. . . .  I mean, if I say don't violate federal law, I don't start making all the determinations about what federal law is that he could violate.

Tr. at 8:5-13 (Court).

Ms. Sirignano argued that the issue was "raised in the [PSR] so [she did not] believe it's premature.  It's in the plea agreement.  So it's ripe for hearing right now."  Tr. at 8:22-25 (Sirignano).  The Court responded that "[t]hey put all sorts of things in the [PSR]. . . .  [T]hey'll say here's how much time we think he's going to be get[ting] credit for, and I don't make those determinations and there may come a day where I have to, but at first it's determined by the Bureau of Prisons."  Tr. at 9:1-6 (Court).  The Court stated that it was "not very excited about th[e registration] issue," and that it had "never done it before, and . . . do[es not] know why" it

- 6 -

would make the determination this time at sentencing.  Tr. at 9:10-11 (Court); id. at 9:13-14 (Court).  The Court stated that, if the need to brief that argument at sentencing was "a basis for withdrawing," the Court "find[s] it odd."  Tr. at 9:19-20 (Court).

The United States asserted that "the fact that [Chavez is] out of money now isn't a sufficient justification for withdrawal, given the posture of the case."  Tr. at 13:15-17 (Baker). The Court asked why that reason was not a valid one for withdrawal, and the United States referenced, without citing, a "Second Circuit case, I think," and acknowledged that it had found no case on point from the United States Court of Appeals for the Tenth Circuit.  Tr. at 14:4 (Baker); see id. at 13:23-14:1 (Court, Baker).  The United States cites a case from the United States Court of Appeals for the Second Circuit for that proposition in their brief.  See Response at 3 (citing United States v. Parker, 439 F.3d 81, 104 (2d Cir. 2006)).

The Court then conducted ex parte communications with Chavez and his attorneys.  See Tr. at 20:2-4.  Ms. Sirignano stated that the attorney-client relationship had broken down and that Chavez had not been responding to his attorneys' attempts to communicate with him about the case.  See Tr. at 20:22-24 (Sirignano); id. at 21:22-24 (Sirignano).  The Court spoke directly to Chavez, who stated that he realized that day, for the first time, that he had not communicated adequately with his attorneys and stated that he could rectify the situation if given the opportunity.  See Tr. at 23:20-24:12 (Chavez); id. at 24:13-25 (Court, Chavez).  The Court asked both Ms. Sirignano and Chavez if they would be willing to work together if the Court appointed Ms. Sirignano as CJA counsel to the case.  Ms. Sirignano deferred to Chavez, see Tr. at 21:21-22 (Sirignano); id. at 22:3-5 (Sirignano), and Chavez said that he "would love to . . . have her team as my attorneys, if she's comfortable with it.  But if not, then I can go with a CJA also."  Tr. at 26:10-13 (Chavez).  The Court then informed Chavez that "the reality is that most CJA work is

done [with] just one attorney," Tr. at 26:14-15 (Court), and asked him if he "ha[d] a preference among the three as to who would be appointed," Tr. at 26:20-21 (Court). Chavez responded that "[i]t would have to be Ms. Sirignano." Tr. at 26:22-23 (Chavez). Ms. Sirignano responded that she would accept the appointment, see Tr. at 27:12-19 (Sirignano), and Ms. Kirby and Mr. Nault stated that they were both satisfied with that arrangement as well, see Tr. at 28:7-8 (Kirby, Nault).

The Court then brought the United States back into the courtroom, and informed it that Ms. Sirignano would be appointed as CJA counsel, and that Ms. Kirby and Mr. Nault would be permitted to withdraw from the case. The Court addressed the sex offender registration issue, stating that it was not inclined to decide the issue at sentencing, but would

> have no problem with saying the Court is not making any determination at this time as to whether he is required to register . . . [a]nd then we also maybe put into the standard sex offender condition something to this effect: That probation, if it maintains that he is required to [register] as a sex offender . . . that they not submit a petition to the Court, but instead they bring the matter to the Court's attention . . . so they don't violate him . . . without him getting a chance to argue that the law didn't apply.

Tr. at 31:13-32:3 (Court).

## LAW REGARDING WITHDRAWAL OF COUNSEL IN A CRIMINAL CASE

"Withdrawal or substitution of counsel must be made by motion and order," D.N.M. L.R.-Crim. 44.1(f), and the Court has wide discretion in granting or denying these motions. See United States v. Porter, 405 F.3d 1136, 1140 (10th Cir. 2005)(reiterating that district courts' decisions to grant or deny requests to substitute counsel are reviewed only for abuse of discretion). The Court must grant a motion for substitution or withdrawal of counsel only when there is "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict . . . ." United States v. Porter, 405 F.3d at 1140 (quoting United States

v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987))(internal quotation marks omitted).

> Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney . . . .  [The movant] must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.

405 F.3d at 1140 (quoting United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002))(internal quotation marks omitted).

When it is the defendant who seeks to dismiss his attorney, courts are to weigh the following factors in assessing whether to grant the request: (i) whether the request was timely; (ii) whether the defendant-attorney conflict was so great that it led to a total lack of communication and prevented the preparation of an adequate defense; and (iii) whether the defendant was at fault for the conflict.  See Romero v. Furlong, 215 F.3d 1107, 1113 (10th Cir. 2000).  In situations in which it is the attorney seeking to withdraw, the Second Circuit has stated that "[a] client's refusal to pay attorney's fees may constitute 'good cause' to withdraw," but "[i]n most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel."  United States v. Parker, 439 F.3d 81, 104 (2d Cir. 2006)(quoting McGuire v. Wilson, 735 F. Supp. 83, 84 (S.D.N.Y. 1990))(adding that "the exhaustion of a retainer is not evidence of a deliberate violation").  The Tenth Circuit has not addressed the issue whether and when a criminal defendant's failure to pay his attorney constitutes good cause for withdrawal.

### LAW REGARDING THE CRIMINAL JUSTICE ACT

Congress enacted the CJA in 1964 "to insure effective representation for those charged with a crime or confronted with the risk of being deprived of constitutional rights in ancillary proceedings."  United States v. Gonzalez, 150 F.3d 1246, 1258 (10th Cir. 1998)(citation

omitted).   Section 3006A states: "Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section."   18 U.S.C. § 3006A(a).   A court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel." 18 U.S.C. § 3006A(b).  The statute permits, but does not require, courts to conduct the appointment proceedings ex parte.  In contrast, § 3006A(e) states: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application."  18 U.S.C. § 3006A(e)(1).  Requests for investigative or expert services are conducted in ex parte proceedings so that the defendant's defense strategy is not disclosed.  See United States v. Gonzalez, 150 F.3d at 1258; Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970)("The manifest purpose of requiring that the inquiry [regarding requests for investigative, expert, and other services] be ex parte is to ensure that the defendant will not have to make a premature disclosure of his case.").

Under the CJA, financially eligible persons receive appointed counsel to assist them.  The CJA provides:

(1) Representation shall be provided for any financially eligible person who --

(A) is charged with a felony or a Class A misdemeanor;

(B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;

(C) is charged with a violation of probation;

(D) is under arrest, when such representation is required by law;

(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a

term of supervised release;

(F) is subject to a mental condition hearing under chapter 313 of this title;

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title [concerning transfers].

18 U.S.C. § 3006A(a)(1).  Under subsection (C) of the CJA, "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings."  18 U.S.C. § 3006A(C).

The Judiciary Guide to Policy and Procedures provides guidance to judges on a number of issues.  The Guide codifies promulgations of both the Judicial Conference of the United States and the Director of the Administrative Office.  Part A, Chapter 2, of Volume 7 of the Guide addresses eligibility for CJA representation.  Section 2.01(F) states:

Other cases or proceedings which may be covered or compensable under the Act include, but are not limited to the following (see also paragraph 2.22B(2)):

. . .

(5) Representation may be furnished for financially eligible persons in "ancillary matters appropriate to the proceedings" pursuant to subsection (C) of the Act.  In determining whether a matter is ancillary to the proceedings, the court should consider whether the matter, or issues of law or fact in the matter, arose from, or are the same as or closely related to, the facts and circumstances surrounding the principal criminal charge.

In determining whether representation in an ancillary matter is appropriate to the proceedings, the court should consider whether such representation is reasonably

- 11 -

necessary to accomplish, inter alia, one of the following objectives:

> (i) to protect a Constitutional right;

> (ii) to contribute in some significant way to the defense of the principal criminal charge;

> (iii) to aid in preparation for the trial or disposition of the principal criminal charge;

> (iv) to enforce the terms of a plea agreement in the principal criminal charge;

> (v) to preserve the claim of the CJA client to an interest in real or personal property subject to a civil forfeiture proceeding pursuant to 21 U.S.C. § 881, 19 U.S.C. § 1602 or similar statutes, which property, if recovered by the CJA client, may be considered for reimbursement under subsection (f) of the Act and paragraph 2.04 of these Guidelines; or

> (vi) to effectuate the return of real or personal property belonging to the CJA client which may be subject to a motion for return of property pursuant to Fed. R. Crim. P. 41(e), which property, if recovered by the CJA client, may be considered for reimbursement under subsection (f) of the Act and paragraph 2.04 of these Guidelines.

The scope of representation in the ancillary matter should extend only to the part of the ancillary matter that relates to the principal criminal charge and to the correlative objective sought to be achieved in providing the representation (e.g., a CJA defendant in a criminal stock fraud case should be represented by CJA counsel at the defendant's deposition in a parallel civil fraud action for the limited purpose of advising him concerning his Fifth Amendment rights). Representation in an ancillary matter shall be compensable as part of the representation in the principal matter for which counsel has been appointed and shall not be considered a separate appointment for which a separate compensation maximum would be applicable under paragraph 2.22B of these Guidelines. A private panel attorney appointed under the Act may obtain through an ex parte application to the court, a preliminary determination that the representation to be provided in an ancillary matter is appropriate to the principal criminal proceeding and compensable under subsection (C) of the Act and this guideline. However, failure to obtain such a preliminary determination shall not bar the court from approving compensation for representation in an ancillary matter provided that the services and compensation related thereto are justified in a memorandum submitted by the attorney to the court at the conclusion of the principal criminal matter and the presiding judicial officer finds that such representation was appropriate.

(6) Under 18 U.S.C. § 983(b)(1), if a person with standing to contest the forfeiture of property in a judicial civil forfeiture proceeding under a civil forfeiture statute is financially unable to obtain representation by counsel, and the person is represented by counsel appointed under 3006(a) of title 18, United States Code, in connection with a related criminal case, the court may authorize counsel to represent the person with respect to the claim.

Guide to Judiciary Policy and Procedures § 2.01(F) (emphasis omitted).

## ANALYSIS

The Court will appoint Ms. Sirignano to represent Chavez as CJA counsel, and allow Mr. Nault and Ms. Kirby to withdraw their representation. There is no major substantive conflict or conflict of interest between Ms. Sirignano and Chavez, and the Court is convinced that, while the attorneys' concerns were not principally financial, the breakdown in communication between them and Chavez arose because of financial issues. Chavez has indicated a desire to keep his current attorneys and a willingness to communicate properly with them in the future. See Tr. at 26:9-12 (Chavez). With Ms. Sirignano appointed as CJA counsel, the financial issues that previously plagued their relationship -- ultimately infecting their ability to communicate about the substance of the case -- will be excised, and the relationship between Ms. Sirignano and Chavez will be only that of attorney and client, and not creditor and debtor.

The Court finds that Chavez is indigent on the basis of his Financial Affidavit, and the United States has not contested this finding. See Financial Affidavit -- CJA23, filed January 27, 2014 (Doc. 100).[3] Chavez cannot pay, and, thus, the only two options are to appoint Chavez CJA counsel, or to force some or all of Chavez' attorneys to finish the case for free. Although

---

[3] This document was filed under seal, and the Court need not divulge the contents of the document here. As mentioned in the hearing, Chavez lost his job as a probation and parole officer, now works at Target, and has been paying for the assistance of three private attorneys defending a federal criminal case.

the United States urges the second option,[4] the Court deems this unfair to the attorneys, and additionally worries about the perverse incentive it creates for the attorneys: the less time they spend on Chavez' case -- and the more time they have available to spend on paying cases -- the better off they would be.  As for the first option, appointing CJA counsel, the Court could appoint new counsel from outside the case, but then the United States' concern that the new lawyer would have to spend extra time and energy, duplicative of the efforts of Chavez' current attorneys, would be valid.[5]  This route would disrupt the Court's schedule for the case, and cost

_____

[4] The United States cites United States v. Parker, for the proposition that "[n]on-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation."  Response at 4 (quoting United States v. Parker, 439 F.3d at 104)(internal quotation marks omitted).  In addition to being non-binding authority, United States v. Parker is distinguishable on its facts, and contains a number of statements of law hedging against the quote that the United States cherry-picked.  See 439 F.3d at 104 ("A client's refusal to pay attorney's fees may constitute 'good cause' to withdraw.  In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel." (citations omitted)).  In that case, the defendant's attorney, in response to the presiding magistrate judge's inquiry, stated on the record at his first appearance that he had been "'fully retained' for the duration of the proceedings.'"  439 F.3d at 85.  The judge's inquiry was made pursuant to that "[d]istrict['s] practice of inquiring whether an attorney has been 'fully retained,'" which exists "to put counsel on notice at the outset that . . . if he undertakes representation of a criminal defendant, he will be expected to do so until the matter is terminated in the district court."  439 F.3d at 102 (quoting United States v. Parker, No. CR 00-0053 A, 2004 WL 2095684, at *10 (W.D.N.Y. Sept. 14, 2004)(Arcara, C.J.)).  The District of New Mexico has no such policy, and Chavez' attorneys made no such representation.  See D.N.M. L.R.-Crim.  In addition, the attorney in United States v. Parker made no representation that communication had broken down between him and his client; to the contrary, the two cooperated in filling out the defendant's application for a CJA appointment.  See 439 F.3d at 86-87.

In any case, the Court is not persuaded that nonpayment of legal fees cannot be a sufficient basis to permit an attorney to withdraw representation.  Defense attorneys should hot have to work for free; there no public policy that says this group of attorneys should give their services to defendants who will not pay or cannot pay.  In cases like this one, where the defendant retained counsel, exhausted his resources, and now needs CJA counsel, the public has benefitted, in that the defendant, not the public, funded most of the defense expense.  There is no benefit to society to, by judicial fiat, make lawyers stay on a case without compensation.

[5] This concern is only heightened by the Court's prediction that Ms. Sirignano vastly

- 14 -

additional money in CJA fees for work that has already been performed at Chavez' expense. The Court, thus, decides to appoint one of Chavez' current lawyers to the case as CJA counsel -- but only one, in keeping with CJA standard practice, and to minimize costs. The Court gave Chavez the opportunity to elect who he would like to continue to represent him, and he elected Ms. Sirignano.[6] See Tr. at 26:22-23 (Chavez).

The Court is not ordinarily excited about appointing a criminal defendant's privately retained attorney as his CJA counsel midway through the case, after the private attorney has exhausted the defendant's private resources. The Court does not want to incentivize or enable the unseemly practice of lawyers seeking to first exhaust their clients' resources -- billing at a higher rate than CJA appointments pay -- then using their familiarity with the defendant's case to obtain a CJA appointment on the same case. This practice would maximize the attorney's revenue -- and the quicker the attorney could exhaust the client's resources, the better -- and the Court, thus, takes affirmative steps to ensure that this practice does not flourish in the District of New Mexico. Here, however, the case-specific benefits of making an exception to the Court's usual policy outweigh the potentially poor precedent it sets. Additionally, it appears from the

_____

overestimates the amount of time she will have to spend to finish the case: The Court does not normally decide sex offender registration issues at sentencing, and, while this question is not before the Court at this time, no party has articulated a promising argument that the Court should make an exception for this case. Hence, while an outside CJA attorney would have to spend a significant amount of time learning the background of the case, Ms. Sirignano most likely needs only to formulate an argument that the Court should accept the Plea Agreement, which she negotiated.

[6] In addition to being the attorney whom Chavez chose to represent him, Ms. Sirignano is also the only one of the three attorneys who is on the District of New Mexico's CJA Panel. See Order Establishing CJA Panel of Attorneys, filed December 18, 2013, No. 14-MC-0004 (Doc. 3). The Court can, however, admit an attorney pro hac vice to the CJA Panel "in exceptional circumstances." Order Adopting CJA Plan at 9, filed May 10, 2004, No. 14-MC-0026.

fact that Ms. Sirignano moved to withdraw from the case, and accepted a CJA appointment only when the Court suggested it as an alternative, that she is not attempting to engage in such a practice.

All parties to the hearing -- Chavez, Ms. Sirignano, Mr. Nault, Ms. Kirby, and the United States -- agreed to this solution at the hearing; it allows the case to proceed on schedule; it is less costly to the Court than appointing a new CJA attorney unfamiliar with the case, who would have to spend additional, duplicative hours getting up to speed; it allows Chavez to keep an attorney with whose performance he is pleased, and with whom he feels he can maintain a good relationship; and it prevents any of Chavez' attorneys from having to work for free.

**IT IS ORDERED** that the Defendant's Motion to Withdraw as Counsel, Request for Substitution of Court-Appointed Counsel, and Motion to Continue Dealdine [sic] for Submission of Objections to Presentence Report and Defendant's Sentencing Memorandum, filed February 3, 2014 (Doc. 95), is granted in part and denied in part.  The Court will permit Kevin Nault and Quinn Kirby to withdraw their representation, and will appoint Amy Sirignano to the case under the Criminal Justice Act.  The Court will extend the February 4, 2014, deadline for submission of objections to the Presentence Report by seven days, and the sentencing hearing on the case will remain scheduled for March 3, 2014.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
    United States Attorney
Mark T. Baker
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Quinn Kirby
Kirby Law Offices, LLC
Albuquerque, New Mexico

--and--

Amy Sirignano
Kevin L. Nault
Law Office of Amy Sirignano, PC
Albuquerque, New Mexico

*Attorneys for the Defendant*